# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

RONALD K. JOHNSON,

    Plaintiff,

v.

RONALD VAN BOENING, *et al*,

    Defendants.

Case No. C07-5426RBL-KLS

ORDER TO SHOW CAUSE

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4 and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72. This matter comes before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b) and 12(b)(6). (Dkt. #34). After reviewing the complaint, defendants' motion and the balance of the record, the Court hereby finds and orders as follows:

This case involves a civil rights action under 42 U.S.C. § 1983 filed by plaintiff against defendants for violating his federal constitutional rights with respect to conditions of his classification status, denial of access to the courts, and termination from employment due to his race. (Dkt. #11). He seeks injunctive relief and both compensatory and punitive damages. Defendants argue the complaint should be dismissed because plaintiff failed to (1) exhaust his administrative remedies, and (2) state a claim upon which relief may be granted. While the Court agrees that dismissal of the complaint is proper for the reasons set forth

below, the Court is issuing this order to show cause in order to give plaintiff an opportunity to cure the deficiencies contained therein.

I. Standard of Review

    A. Exhaustion of Administrative Remedies

In their motion to dismiss, defendants argue the complaint should be dismissed on the basis that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e). "[T]he PLRA does not impose a pleading requirement" on plaintiff, but rather "creates a defense," with respect to which "defendants have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because "[t]he failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement," it "is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." Id.; see also Ritza v. International longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (while no defense described in Fed. R. Div. P. 12(b)(1) through (7) encompasses failure to exhaust, federal courts traditionally have entertained certain pre-answer motions not expressly provided for by rule, and authority to hear such motions lies in federal court's inherent power to regulate actions pending before it). As such, a motion to dismiss under Fed. R. Civ. P. 12(b) is proper here.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions" under 42 U.S.C. § 1983 by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Since passage of this section of the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford v. Ngo, 548 U.S. 81, 85 (2006) (finding prisoners now must exhaust all available remedies); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory."). "Even when the prisoner seeks relief not available in grievance proceedings," furthermore, "exhaustion is a prerequisite" to filing a civil rights action in federal court. Porter, 534 U.S. at 524.

Failure to exhaustion such administrative remedies, therefore, requires dismissal of the underlying complaint without prejudice under 42 U.S.C. § 1997e(a). McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); Wyatt, 315 F.3d at 1120 (if district court concludes that prisoner has not exhausted nonjudicial remedies, proper remedy is dismissal of claim without prejudice); see also Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) (suit filed by prisoner before administrative remedies have been

exhausted must be dismissed; district court lacks discretion to resolve claim on merits, even if prisoner exhausts intra-prison remedies before judgment).

In deciding whether to grant a motion to dismiss for a failure to exhaust administrative remedies, furthermore, the Court "may look beyond the pleadings and decide disputed issues of fact." <u>Wyatt</u>, 315 F.3d at 1119-20; <u>see also</u> <u>Ritza</u>, 837 F.2d at 369 (district court has broad discretion as to method used in resolving factual disputes arising in connection with jurisdictional or related types of motions, such as matters in abatement; no presumptive truthfulness attaches to plaintiff's allegations, and existence of disputed material facts will not preclude district court from evaluating for itself claims' merits). If the Court does look beyond the pleadings "to a factual record in deciding the motion to dismiss for failure to exhaust," it "must assure" plaintiff "has fair notice of his opportunity to develop a record." <u>Wyatt</u>, 315 F.3d at 1120 n. 14. The Court finds plaintiff has had such notice here.[1]

B. <u>Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

The Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to the complaint. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001). All material factual allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the light most favorable" to the plaintiff. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Lee</u>, 250 F.3d at 688. A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. <u>Jones v. Community Development Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984); <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992). Thus, even though the Court is to construe the complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." <u>Pena</u>, 976 F.2d at 471.

---

[1] Although plaintiff has not filed any response to defendants' motion, there is no indication in the record that he did not receive that motion. Nor, for that matter, has petitioner voiced any objection or concern that he has not been provided with a fair opportunity to respond thereto or to develop the record here.

ORDER
Page - 3

Before the Court "may dismiss a *pro se* complaint for failure to state a claim," it "must provide the *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to dismissal." McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992); see also Noll v. Carlson, 809 F.2d 1446, 1449 (9th Cir. 1987) (district court erred by not notifying *pro se* prisoner litigant of amended complaint's deficiencies and allowing him leave to amend). In this case, while as explained below, plaintiff has not alleged any claim or cause of action upon which the relief he is requesting can be granted, the Court shall give him the opportunity to (1) show that all the claims in his complaint have been fully exhausted, and (2) cure the deficiencies in his complaint by filing an amended complaint by the date set forth below.

C.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff also must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a section 1983 claim. Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982).

II.    Conditions of Classification

Plaintiff claims in his complaint that he, and "the class of people" at the prison unit where he is incarcerated, have been subject to "consistent lockdowns," "constant strip searches" and other restrictive procedures by prison staff members to which inmates at other facilities are not subject. (Dkt. #11, pp. 3-4). He asserts that these conditions violate his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, and, more specifically, his right to equal protection. Defendants argue these claims should be dismissed both for failure to exhaust available administrative remedies, and because plaintiff has failed to state a

claim upon which relief may be granted. The Court disagrees that a failure to exhaust has been shown here, but does agree that plaintiff has failed to state a proper claim.

Defendants have presented the declaration of Devon Schrum, who has been the Washington State Department of Corrections ("DOC") Grievance Program Manager since April 2006. (Dkt. #34-2, p. 1). Under the DOC's Offender Grievance Program ("OGP"), which has been in existence since the early 1980's, inmates may file grievances over a wide range of aspects of their imprisonment, including the application of DOC policies, rules and procedures, the lack thereof that directly affects the inmates' living conditions, and the actions of staff. Id. at pp. 1-2. An inmate may not file a grievance regarding, among other things, placement or retention in administrative segregation, classification/unit team decisions, transfers, or disciplinary actions. Id. at p. 2. The OGP also provides a wide range of remedies, including administrative actions, agreement by DOC officials to remedy objectionable conditions in a reasonable period of time, and changes in policy or procedure. Id.

There are four levels of review under the OGP. At Level 0, the complaint or informal level:

> The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance.

Id. "Routine and emergency complaints accepted as formal grievances begin at Level I," where again the "local [prison] grievance coordinator is the respondent." Id. Inmates then may appeal Level I grievances to Level II, where the prison superintendent is the respondent. Id. Staff conduct grievances are initiated at Level II as well. Id. All Level II responses, except for emergency grievances, may be appealed to DOC headquarters at Level III. Id. at p. 3.

Ms. Schrum further states that "[t]he DOC's grievance system is well known to inmates," and that plaintiff filed a grievance at Level I regarding the conditions he alleged to have experienced as a result of his classification status. Id. at pp. 3 and 5, Exhibit L. The response to that grievance informed plaintiff that the issues he raised regarding classification decisions were not grievable. Id., Exhibit L. Plaintiff filed another grievance concerning the same issues, checking the box on the grievance form indicating it was an "appeal to the next level." Id., Exhibit M. In response, Ms. Schrum informed him that his "complaint was found to be not grievable by the local grievance coordinator," and that she concurred "with the not grievable finding." Id., Exhibit N. Ms. Schrum states that plaintiff "did not submit a Level

III grievance nor did he appeal the initial appeal" of his original grievance. Id. at p. 5. However, given that plaintiff's complaint was not grievable – and defendants have not shown what procedures, if any, are available for appealing non-grievable complaints – it is not clear that he was required to do anything further regarding his complaint, or, if he was, how he was supposed to do so. As such, the Court does not have sufficient information to find a failure to exhaust here.

The Court does find, however, that plaintiff has failed to state a claim upon which relief may be granted regarding the alleged unconstitutional conditions of his classification. First, plaintiff has not stated how individually named defendants caused or personally participated in the harm alleged here. Rather, he merely claims prison "[s]taff members" violated his constitutional rights by imposing the above conditions on him and the other alleged members of his class. (Dkt. #11, p. 3). Plaintiff does mention defendants Ahearn, Johnson and Hines in the same section of the complaint that contains his conditions of classification claims, but he appears to mention them only with respect to his allegation that they denied his "right to request a transfer without being told that" he "must commit a major infraction inorder [sic] to request" one. (Id.).

Even if it can be said that plaintiff did properly attribute the conditions of classification claims to defendants Ahearn, Johnson and Hines, he still has not stated a valid Fourth, Fifth, Eighth, or Fourteenth Amendment claim here. Indeed, it is not exactly clear in what ways plaintiff believes these rights were violated. Plaintiff does allege that the restrictions violated his equal protection rights. Under the Equal Protection Clause, all persons similarly situated must be treated similarly by the government. Inmates are protected under the Equal Protection Clause against invidious discrimination. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S. 333, 334 (1968). To set forth a *prima facie* violation of the Equal Protection Clause a plaintiff first must prove a discriminatory intent or purpose. Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977); Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991). Conclusory allegations by themselves do not establish an equal protection violation, however, without further proof of invidious discriminatory intent. See Village of Arlington Heights, 429 U.S. at 265.

Plaintiff must "show that he was treated differently from other inmates because he belonged to a protected class." Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995); see also Barren v. Harrington, 152 F.3d 1193, 1195 (9th Cir. 1998). The fact that plaintiff is a prisoner, though, does not itself qualify

him as a member of a protected class for Equal Protection Clause purposes. See, e.g., Wolff, 418 U.S. at 556 (prisoners protected from invidious discrimination based on race); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997) (inmates protected from intentional discrimination based on religion). Here, plaintiff does not allege he was treated differently because of his race or religion, but because he and other inmates were housed in a facility where he claims they were treated differently than inmates elsewhere.

To the extent plaintiff also is claiming a due process violation, procedural or substantive, that claim also fails. Substantive due process protects individuals from arbitrary and unreasonable government action which deprives any person of life, liberty, or property. Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1234 (9th Cir. 1994). To establish a substantive due process violation, the government's action must have been "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Sinaloa Lake Owners, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)); Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir.1988).

In the prison context, furthermore, an inmate will be found to have "a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). Plaintiff, however, has not shown that defendants' imposed an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Indeed, plaintiff himself states that other inmates with his classification status are subject to the same conditions that he is. Nor has plaintiff demonstrated the lockdowns, strip searches and other restrictions of which he complains are not atypical in the context of the prison in which he is incarcerated, although they may, as he alleges, be different to one extent or another from those imposed at other institutions.

Plaintiff also may be asserting a procedural due process claim. The Due Process Clause provides that "no state shall 'deprive any person of life, liberty, or property without due process of law.'" Toussaint v. McCarthy, 801 F.3d 1080, 1089 (9th Cir. 1986). A section 1983 claim based on procedural due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Plaintiff, however, has not alleged or shown what process was lacking or

due him. Any such claim thus fails here as well.

Plaintiff alleges his classification conditions subjected him to cruel and unusual treatment. The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted). To state a claim under the Eighth Amendment, plaintiff must satisfy two requirements. First, the deprivation being alleged "must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted). That is, the prison official's "act or omission must result in the denial of 'the minimum civilized measure of life's necessities.'" Id.

In addition to this "objective component," there is a subjective one. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). The prison official thus also "must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (citation omitted); Helling v. McKinney, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). This state of mind "is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834. In other words, liability under the Eighth Amendment "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (citation omitted). An official, therefore, will not be liable:

> [U]nless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.

Id. at 837; see also Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk that he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." Id. at 838.

Conversely, "the routine discomfort inherent in the prison setting is inadequate to satisfy the objective" requirement. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); see also Hudson, 503 U.S. at 9 ("[R]outine discomfort is 'part of the penalty criminal offenders pay for their offenses against society.'") (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Plaintiff has not stated exactly what constituted the cruel and unusual punishment of which he complains. Nor, as explained above, has he shown that his classification conditions are anything but the "routine discomfort" inherent in the prison

setting in which he finds himself. Further, even if it could be said that those conditions were objectively, sufficiently serious, plaintiff has not shown that any of the named defendants was aware that a substantial risk of serious harm existed.

Lastly, plaintiff may be raising a Fourth Amendment claim regarding the "constant strip searches" he alleges occurred. (Dkt. #11, p. 3). The Fourth Amendment "guarantees '[t]he right of the people to be secure ... against unreasonable searches and seizures." Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988) (quoting U.S. Const. Amend. IV). While "[t]his right extends to incarcerated prisoners . . . the reasonableness of a particular search is determined by reference to the prison context." Id. As such, the Fourth Amendment "does not prohibit strip searches . . . of all inmates." Rickman v. Avaniti, 854 F.2d 327, 328 (9th Cir. 1988). The test to be applied in determining the reasonableness of a strip search is as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. Further, "judicial deference to prison administrators should be 'wide-ranging,' especially concerning 'the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Here, though, plaintiff has not set forth any specific facts regarding the particular searches or the scope of or the place or manner in which they were allegedly conducted. As such, he has not shown that any searches which did occur were unreasonable.

As noted above, plaintiff does specifically allege defendants Ahearn, Hines and Johnson denied him the "right to request a transfer without being told that" he "must commit a major infraction inorder [sic] to receive a transfer." (Dkt. #11, p. 3). A prisoner, however, has "no constitutional right to a particular classification status." Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also Moody v. Daggett, 429 U.S. 78, 88 n. 9 (rejecting claim that prisoner classification in federal system invoked due process protections); Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993) (no liberty interest under Washington or federal constitutions to be free from administrative segregation). The same is true with respect to transfers between prisons:

> [T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner

> against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

Meachum v. Fano, 427 US 215, 225 (1976) ("Transfers between institutions . . . are made for a variety of reasons and often involve no more than informed predictions as to what would be best serve institutional security or the safety and welfare of the inmate."). Plaintiff's claim here thus fails.

III.     Responding to Court Deadline

Plaintiff alleges defendants Buss, Miller, Hines, Ahearn, Woody and Cunningham refused to assist him in timely responding to "court ordered directions that mandated a response," by not allowing him to obtain his legal mail during a 24-hour period. (Dkt. #11, p. 4-5). Plaintiff also alleges the above defendants denied him "access to the law library for an emergency deadline," which directly resulted in his "court action being terminated." Id. In addition, plaintiff claims the above defendants disciplined him, stating that he had "fabricated the court deadline," and that he "was targeted and fired" for attempting to respond as ordered by the court. The Court agrees with defendants that plaintiff failed to exhaust his administrative remedies with respect to these claims.

While plaintiff filed a number of grievances regarding access to the law library and his court-imposed deadline, he failed to fully pursue his appeal options with respect to each of them. See (Dkt. #34-2, p. 3-4, Exhibits A-F). Plaintiff also filed a grievance against the law library for having denied "the processing of legal matters." (Id. at Exhibit G). The response indicated the issue was not grievable. Id. But, given that the complaint was wholly general in nature, and that it was directed at the law library itself, the Court finds it does not address the particular issues raised in the above claims. Further, although plaintiff filed two initial grievances against defendants Johnson and Hines for not assisting him in confirming a court-related matter telephonically, it appears he failed to submit those grievances to the proper authorities, and, in any event, did not pursue them any further. (Id. at Exhibits H-I).

In addition, plaintiff has failed to state a valid access to the courts claim. Inmates do have "a constitutional right of access to the courts." Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers" by providing them with "adequate law libraries or adequate assistance from persons trained in the

law." Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977)). Because "meaningful access to the courts is the touchstone" here, however, to prevail on an access to courts claim, plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Cornett, 51 F.3d at 897 (citing Bounds, 430 U.S. at 823); see also Lewis, 518 U.S. at 348 (inmate must show inadequacy of prison library or legal assistance program caused actual injury or prejudice such as inability to meet filing deadline or present claim). Plaintiff, for example, might show:

> [T]hat a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 352.

Defendants argue plaintiff's claim fails because he does not explain what case he was not allowed to work on, what deadline he missed, that he was unable to work on his legal matters outside the above-noted 24-hour period, or that his legal action was non-frivolous. While the merit of the actual legal claim is not necessarily fatal to an access to the courts claim, the Court does agree that plaintiff has not set forth sufficiently specific facts to show he had an actual valid court-imposed deadline that he missed as a result of defendants' alleged actions. Indeed, plaintiff's failure to respond to defendants arguments here could be taken as an admission that such is the case.

As noted above, plaintiff also appears to be alleging a claim of retaliation for having requested that defendants assist him with his court-related matters. To state a claim for retaliation, an inmate "must allege both that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). He "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Here, though, plaintiff's retaliation claim fails for the same reason his underlying access to the courts claim fails. That is, he has failed to provide sufficient facts that an actual constitutional violation occurred.

IV.     Termination from Fire Fighter Job

Plaintiff alleges in his complaint that he was terminated from his job as an inmate fire fighter "for

1  being the wrong color, being african american," and that he was treated differently from others as a result
2  of his race by defendants Buss and Miller.[2] (Dkt. #11, p. 5). As noted above, under the Equal Protection
3  Clause inmates are protected against invidious discrimination. Wolff, 418 U.S. at 556; Lee, 390 U.S. at
4  334. To set forth a *prima facie* equal protection violation, plaintiff first must prove a discriminatory
5  intent or purpose. Village of Arlington Heights, 429 U.S. at 265; Bagley, 923 F.2d at 763. However,
6  conclusory allegations by themselves do not establish an equal protection violation without further proof
7  of invidious discriminatory intent. See Village of Arlington Heights, 429 U.S. at 265.

Plaintiff filed a grievance regarding the loss of his fire fighter job, complaining that he was fired from that job because of his race. (Dkt. #34-2, Exhibit J). The grievance response plaintiff received was that classification/unit decisions were not grievable. (Id.). Plaintiff also filed an appeal to that response, in answer to which he was informed that he could "submit an appeal of a not grievable finding." (Id., Exhibit K). The record does not contain any documentation or other evidence that plaintiff pursued this option. Thus, while it appears plaintiff's complaint regarding the termination of this employment was considered to be not grievable, there was an available avenue through which to appeal this matter that plaintiff could have pursued, but failed to do so. As such, the Court finds this claim is not exhausted.

In addition, as noted above, plaintiff must "show that he was treated differently from other inmates because he belonged to a protected class." Seltzer-Bey, 66 F.3d at 964; see also Barren, 152 F.3d at 1195. Defendants argue plaintiff's claim must fail here because inmates do not have any constitutional right to employment in prison. While perhaps true,[3] an inmate still may have a valid equal protection claim with respect to treatment based on his or her race.[4] Nevertheless, although plaintiff has alleged he was treated differently due to being a member of such a protected class in this matter, he has not set forth any specific facts showing that this actually occurred, or what specifically the above-named defendants allegedly did that amounted to discrimination against him because of his race.

---

[2] Plaintiff also makes the same claims against Fire Captain Patrick Teaford. However, plaintiff has not named Captain Teaford as a defendant in this case. In any event, to the extent that plaintiff did intend to name Captain Teaford as a defendant, his claims fail here for the same reasons discussed below that they fail with respect to defendants Miller and Buss.

[3] See, e.g., Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986); Farr v. Blodgett, 810 F. Supp. 1485, 1497 n.10 (E.D. Wash. 1993).

[4] See, Wolff, 418 U.S. at 556 (prisoners protected from invidious discrimination based on race).

1  V.    Legal Research and Preparation

       Lastly, plaintiff alleges that he was denied "meaningful time, to prepare or research court cases for litigation" at the prison law library, and that defendants Hines and Ahearn told him that access to the law library was only recreational, not mandatory. (Dkt. #11, p. 6). Plaintiff did file two initial grievances regarding the amount of time the law library is open. (Dkt. #34-2, Exhibits E-F). It appears, however, that he did not appeal either of the responses to those grievances he was provided. (Dkt. #34-2, p. 4, Exhibits E-F). Accordingly, plaintiff failed to exhaust this claim as well.

       As to the actual claim, as noted above, inmates have "a constitutional right of access to the courts." Cornett, 51 F.3d at 897. That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers" by providing them with "adequate law libraries or adequate assistance from persons trained in the law." Lewis, 518 U.S. at 346 (quoting Bounds, 430 U.S. at 828). To prevail on an access to courts claim, plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Cornett, 51 F.3d at 897 (citing Bounds, 430 U.S. at 823). In this case, however, plaintiff has not alleged any of the named defendants actually prevented him from accessing the law library. He merely claims defendants Hines and Ahearn informed him that such access was not mandatory. In addition, plaintiff has not claimed, let alone shown, that the alleged lack of meaningful time to prepare or research cases caused him to miss a court deadline or similarly hindered his efforts to pursue a legal claim.

VI.    Defendants Department of Corrections and McNeil Island Corrections Center

       Plaintiff has named the DOC and the McNeil Island Corrections Center ("MICC") as defendants in this case. (Dkt. #11, p. 1). Defendants argue the DOC and MICC should be dismissed from this matter because they are not subject to liability under 42 U.S.C. § 1983. The undersigned agrees. Under the Eleventh Amendment, a state is not subject to suit by its own citizens in federal court. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). A state agency, as an arm of the state, is immune from suit in federal court under the Eleventh Amendment as well. Howlett v. Rose, 496 U.S. 356, 365 (1990); Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). An entity that has Eleventh Amendment immunity also is

1 not a "person" within the meaning of 42 U.S.C. § 1983.[5] Howlett, 496 U.S. at 365. Accordingly, any claims plaintiff is asserting against defendants DOC and MICC should be dismissed.

VII. Defendants Van Boening, Woody, Johnson, Cunningham, and Vu

Defendants argue defendants Van Boening, Woody, Johnson, Cunningham, and Vu also should be dismissed from this case, because, other than naming them as defendants, plaintiff has failed to allege how they caused or personally participated in causing any of the harm alleged. The Court agrees that plaintiff has failed to state in his complaint how defendants Van Boening or Vu violated his constitutional rights, and, as such, should be dismissed from this matter. As noted above, however, plaintiff specifically did allege, albeit erroneously, that defendants Woody, Johnson and Cunningham violated his constitutional rights. Accordingly, the Court finds plaintiff's claims against these three defendants should be dismissed not because of their lack of personal participation, but because of a failure to state a valid claim.

VIII. Qualified Immunity

Defendants argue they are entitled to qualified immunity with respect to plaintiff's claims. Under the doctrine of qualified immunity, state officials "performing discretionary functions [are protected] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997). However, because, for the reasons set forth above, plaintiff is being ordered to amend his complaint to cure the deficiencies contained therein, the Court need not address this issue at this time, and declines to do so.

Accordingly, due to the deficiencies described above, the Court will not serve the complaint. Instead, plaintiff shall file an amended complaint, curing, if possible, the above noted deficiencies, or show cause explaining why this matter should not be dismissed by **no later than October 3, 2008**. The amended complaint must carry the same case number as this one. **Plaintiff is warned, however, that failure to so respond to this order by the above date will be treated as an admission that defendants'**

---

[5]Section 1983 reads in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

**motion to dismiss has merit, and therefore will result in a recommendation that defendants' motion be granted.** It further will be recommended that any such dismissal of this action, will be a dismissal of the complaint as being frivolous pursuant to 28 U.S.C. § 1915, and such dismissal will count as a "strike" under 28 U.S.C. § 1915(g).

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended), *cert. denied*, 506 U.S. 915 (1992). Thus, if plaintiff chooses to file an amended complaint, the Court will not consider his original complaint.

The Clerk is directed to send plaintiff the appropriate forms so that she may file an amended complaint. The Clerk is further directed to send a copy of this Order to plaintiff and counsel for defendants.

DATED this 3rd day of September, 2008.

Karen L. Strombom
United States Magistrate Judge